UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>**SCOTT ETHAN CURTIS and MEAGAN RAE CURTIS,**<br><br>Debtors. | Case No. 21-00521-NGH |
| **WILLIAM GARDINER and SHANNON GARDINER,**<br><br>Plaintiffs,<br><br>v.<br><br>**SCOTT ETHAN CURTIS and MEAGAN RAE CURTIS,**<br><br>Defendants. | Adv. No. 21-06015-NGH |

**MEMORANDUM OF DECISION**

Before the Court is a nondischargeability action filed by William and Shannon Gardiner ("Plaintiffs") against Scott and Meagan Curtis ("Defendants").[1]  A trial was held December 6 through December 8, 2022.  The parties submitted closing arguments on January 6, 2023, Doc. Nos. 49 & 50, and replies on January 24, 2023, Doc. Nos. 51 &

---

[1] When discussing their individual actions, the Court will refer to Defendants as Scott and Meagan respectively.

MEMORANDUM OF DECISION - 1

52, after which the Court took the matter under advisement. After considering the record, arguments of the parties, and applicable law, the following constitutes the Court's findings, conclusions, and disposition of the issues. Fed. R. Bankr. P. 7052.[2]

**BACKGROUND**

Defendants operated BFH Idaho, LLC ("BFH Idaho"), which primarily provided construction services such as fence installation and remodels. Scott had previous experience working with gutters, framing, and agriculture. While Scott handled the construction side of BFH Idaho, Meagan handled the administrative tasks and office management. In addition to Scott and Meagan, BFH Idaho had up to six employees at various times, including Glen Anderson. Neither Scott nor BFH Idaho had experience building new homes, though Anderson had significant experience. However, BFH Idaho had completed builds of "additional dwelling units" that Scott testified had similar elements as a new home build but were often smaller in size and on a lot where a home was already located.

Plaintiffs first met Defendants in the fall of 2019. Plaintiffs were looking for a builder to assist in the construction of a log-cabin home in High Valley, Idaho (the "Property") and connected with Defendants' company, BFH Idaho, via HomeAdvisors, an online platform that helps customers find local professionals for home-related projects. Plaintiffs testified that at the time, BFH Idaho's HomeAdvisor page asserted to have 20

---

[2] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532. Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure and all citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 2

years' experience in the field.  *See* Ex. 149.  However, after further discussions between the parties, it became clear Defendants had no experience building log cabins.

After initially connecting, Scott, Anderson, and William Gardiner visited the Property.  The Property was accessible via an unpaved road connected to a highway.  Defendants testified the unpaved road leading to the Property had a steep grade and could be difficult to navigate.

Though Defendants had no experience building log cabins, Defendants ultimately believed based on their experience they were capable of performing the job and agreed to act as the general contractor for the build.  Defendants performed excavation work at the Property prior to beginning construction.  *See* Ex. 101.  Plaintiffs and Defendants on behalf of BFH Idaho signed a construction contract in April of 2020 that provided the total for the work would be $722,341.  Ex. 101 at 16.  Defendants began work on the cabin in the spring of 2020.

To fund construction, Plaintiffs obtained a loan from Idaho Central Credit Union ("ICCU").  Defendants were able to access the loan funds through draw requests, wherein Defendants would submit, via the "getbuilt.com" system, the amount necessary to cover the construction expenses as they were incurred and upload corroborating documents such as invoices.  *See* Exs. 106–116.  When Defendants submitted a request, Plaintiffs would receive a notification, and they would have to approve the draw before the funds were released.  Defendants testified they believed Plaintiffs had access to the getbuilt.com system in order to see the full details of the requests and uploaded documents, but Plaintiffs testified they were not able to access the system until after the

MEMORANDUM OF DECISION - 3

parties' relationship had deteriorated. In total during the construction, Defendants submitted 11 draws, all of which were approved by Plaintiffs, for a total of $549,251.99. *See* Exs. 106–116.

There were various issues during construction, beginning with the delivery of the logs. Lazarus Logs was responsible for the preparation of the construction plans and provided the log cabin package. Lazarus Logs did not deliver the log package to the Property, but rather at an unauthorized location approximately 15 miles away, which resulted in Defendants having to transport the logs in several loads the remaining distance to the Property.

BFH Idaho then contracted with Frank Bachman to lay the logs. Bachman was at the job site for approximately 6–8 weeks in the fall of 2020. Bachman testified he also observed several issues with the project, including problems with how the flooring was built out by BFH Idaho and how Sonotubes (concrete supports) were poured. Further, Bachman testified the back and front of the cabin was not level due to issues with the slab and how the foundation blocks were placed.

Defendants acknowledged that several issues were present during construction. However, Defendants point to difficulties with subcontractors such as ICF of Idaho. ICF of Idaho was responsible for providing the ICF blocks for the foundation. Defendants found ICF of Idaho through a list of distributors provided by an ICF block dealer. Ex. 126 at 2. However, ICF of Idaho did not timely deliver the product, failed to provide sufficient quantities, and appears to have incorrectly installed the blocks. *See id.* at 4–18.

MEMORANDUM OF DECISION - 4

There were also several accidents involving vehicles and construction equipment at the Property during the construction. Several vehicles slid off the unpaved road and Defendants wrecked a Skid-Steer owned by Plaintiffs and had to have it repaired. *See* Ex. 128 at 3. In November 2020, two employees of BFH Idaho were involved in an accident while driving back from the Property, resulting in significant injuries for one employee.

Work on the cabin stalled in December 2020. Due to the winter weather and unsafe conditions, Defendants did not feel safe travelling to the Property, especially considering the accident involving one of BFH Idaho's employees in late November. The relationship between the parties deteriorated around this time. The parties dispute how exactly their relationship broke down: Defendants claimed they believed they were simply pausing work on the project for the winter and point to the fact they had been communicating with Plaintiffs about purchases for the project through December 3, 2020. Ex. 361. However, Plaintiffs claim they believed Defendants were quitting. On December 14, 2020, the parties met to discuss the status of the project. Defendants testified they told Plaintiffs at this meeting they would not be able to complete the project within budget and would need approximately $120,000 in additional funds to complete construction. On December 15, 2020, Plaintiffs sent Defendants an email seeking the collection of $13,681.38 which Plaintiffs asserted was owing for items Defendants had received loan funds for but had not yet paid. Ex. 130. At this point, Defendants testified they obtained counsel. *See* Ex. 127. Plaintiffs proceeded with the construction on the

MEMORANDUM OF DECISION - 5

cabin with another contractor, spending over $120,000 in additional funds to complete the project.

Defendants filed a voluntary chapter 7 petition on August 10, 2021. Case No. 21-00521. On November 8, 2021, Plaintiffs initiated this adversary proceeding against Defendants, Doc. No. 1, and filed an amended complaint on January 20, 2022, seeking a judgment and declaration of nondischargeability pursuant to § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). Doc. No. 9. However, Plaintiffs abandoned their § 523(a)(2)(B) claim prior to trial. Doc. No. 35 at 2.

**ANALYSIS**

**A.     Defendants' Liability**

The first issue the Court must address is whether Defendants can be held liable based on Plaintiffs' contract with BFH Idaho. Under Idaho law, "'members of an LLC are not liable for the misconduct of the company unless it is proven that the company is the alter ego of the member or manager.'" *T Street LLC v. Jacques (In re Jaques)*, 615 B.R. 608, 627 (Bankr. D. Idaho March 12, 2020) (quoting *Drug Testing Compliance Grp., LLC v. DOT Compliance Serv.*, 383 P.3d 1263, 1276 (Idaho 2016)). To establish that BFH Idaho was the alter ego of Defendants, Plaintiffs must establish "(1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist and (2) if the acts are treated as acts of the [company] an inequitable result would follow." *Id.* at 630.

However, this protection does "not extend to a member's actions when the member causes the company to act illegally or fraudulently, or when the member is not

MEMORANDUM OF DECISION - 6

acting within the bounds of her duties or obligations as a member of the company, but in his or her own self-interest." *Id.* at 628. Thus, Defendants can be found liable for their own personal wrongful or tortious conduct. *See also Murray v. Woodman (In re Woodman)*, 451 B.R. 31 (Bankr. D. Idaho 2011) (finding a debtor personally liable for a nondischargeable debt under § 523(a)(4) where the debtor played an active role in the misappropriation of funds); *see also FTE Networks, Inc. v. Ivie (In re Ivie)*, 587 B.R. 729 (Bankr. D. Idaho 2018) (holding that a president of a corporation was personally liable for nondischargeable debt under § 523(a)(6) where the president intentionally interfered with the plaintiff's prospective economic advantage). Here, though Plaintiffs contracted with BFH Idaho, all their dealings with BFH Idaho went through Defendants and the allegations involve only the conduct of Defendants. As such, to the extent Defendants actively participated or were responsible for the wrongdoing of BFH Idaho, Defendants can be held personally liable for debts stemming from such conduct.

**B.      Nondischargeability**

As noted, Plaintiffs alleged claims of nondischargeability under § 523(a)(2)(A), (a)(4), and (a)(6). Plaintiffs bear the burden of establishing their claims under § 523(a) by a preponderance of the evidence. *Netwest Commc'ns Grp., Inc. v. Mills (In re Mills)*, 2008 WL 2787252, at *4 (Bankr. D. Idaho June 25, 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). In order to preserve a debtor's opportunity for a fresh start, the nondischargeability provisions of § 523(a) should be construed liberally in favor of the debtor. *Id.*

MEMORANDUM OF DECISION - 7

1. **Section 523(a)(2)(A)**

First, Plaintiffs assert that Defendants owe nondischargeable debts under § 523(a)(2)(A) for false statements made regarding Defendants' level of experience and the purpose of the loan draw requests. Section 523(a)(2)(A) bars the discharge of a debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To establish a claim is nondischargeable under § 523(a)(2)(A), a plaintiff must establish several elements:

> (1) the debtor made representation
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representation; [and]
> (5) that the creditor sustained the alleged loss and damages as the proximate result of the misrepresentation having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

First, there must have been a false representation. "A promise made without a present intent to perform satisfies § 523(a)(2)(A), as does a representation which the Defendant knew or should have known was outside of his prospective ability to perform." *Welch v. Laraway (In re Laraway)*, 2010 WL 3703272, at *6 (Bankr. D. Idaho Sept. 13, 2020). As such, representations concerning a defendant's level of experience or capabilities can constitute a false representation under § 523(a)(2)(A).

However, the presence of a false representation by itself is not sufficient under § 523(a)(2)(A). "Not only must there be a representation of material fact which is false, the representation must be made with the intention and purpose to deceive." *Laraway*, 2010 WL 3703272, at *7. A debtor's intent to deceive may be inferred through the

MEMORANDUM OF DECISION - 8

totality of the circumstances. *Huskey v. Tolman (In re Tolman)*, 491 B.R. 138, 153–54 (Bankr. D. Idaho 2013). Bankruptcy courts may find the requisite intent where a debtor has shown a reckless disregard for the truth. *Id.*

### a.    Statements Regarding Experience

First, Plaintiffs point to statements made by Defendants concerning their level of experience. According to Plaintiffs' testimony, at the time Plaintiffs were initially searching on HomeAdvisors, BFH Idaho's HomeAdvisor site advertised it had 20 years of experience. Ex. 149. However, Meagan testified that while she had provided this information to HomeAdvisors, this number referenced the cumulative experience of BFH Idaho's employees and did not represent Scott's individual experience. Considering Scott's years of experience in the industry, as well as several employees of BFH Idaho who had significant experience, advertising 20 years of experience does not constitute a false representation.

Further, Plaintiffs assert Defendants made false statements concerning their home-building experience and the involvement of Glen Anderson in the project. Anderson had years of experience as a general contractor and had overseen the construction of single-family residences. Anderson also had some experience working on log cabins, but not as a general contractor. Anderson was present at the first meeting between Scott and William Gardiner. However, Anderson took no part in the Plaintiffs' project and had left BFH Idaho for another job prior to construction commencing. Plaintiffs assert Defendants brought Anderson to the initial meeting and highlighted his experience to falsely represent he would be working on the project. Plaintiffs further assert such

MEMORANDUM OF DECISION - 9

representation was false because Anderson left BFH Idaho shortly after and took no part in the project. However, Plaintiffs presented no evidence that Defendants knew Anderson would soon be leaving BFH Idaho. As such, the Court cannot conclude that Defendants knowingly made a false representation to Plaintiffs by including Glen Anderson at the initial meeting.

Plaintiffs also assert Defendants knew, or should have known, they were incapable of building the cabin and should not have represented to Plaintiffs they could. In *Narang v. Biswas (In re Biswas)*, the Ninth Circuit Bankruptcy Appellate Panel considered whether a debtor acted knowingly or with intent to deceive when he accepted a job as a general contractor for the construction of a residential house. 2009 WL 7809011 (9th Cir. BAP Sept. 2, 2009). There the debtor's experience was largely in remodels and additions, and he had never acted as a general contractor on a project as large as the plaintiffs'. *Id.* at *2. There were several issues with the construction and the plaintiffs ultimately had to hire another general contractor to complete the project. *Id.* The BAP ultimately agreed with the lower court that while the debtor may have exaggerated his abilities, he did not knowingly make a false representation because he did have relevant experience and believed he could complete the construction by using experienced subcontractors. *Id.* at *5. Further, the BAP noted "[t]he fact that [the defendant] fell short of his promise to build the [plaintiffs] a 'good house' does not demonstrate that he intended to deceive them" for purposes of § 523(a)(2)(A). *Id.*

Plaintiffs rely on an email from an architect, James Jobe, to Defendants, warning Defendants to "think twice" before accepting the job due to their lack of experience. Ex.

MEMORANDUM OF DECISION - 10

104. However, this email does not clearly demonstrate Defendants should have known they were not capable of performing the job—Jobe ends the email stating "I hope that doesn't sound like you aren't capable, but I wanted to say it because you shouldn't be caught holding the bag and buying this guy a cabin." *Id.* Further, it is undisputed that Plaintiffs informed Defendants prior to accepting the job they had no experience building a log cabin. Additionally, like in *Biswas*, while Defendants may not have had direct experience on this type of build, Defendants testified that Scott did have significant experience in several aspects of construction, such as in framing, fencing, and as a foreman. Scott also had worked as a general contractor on projects for "additional dwelling units," which are similar in build to single family residences.

Plaintiffs suggest several issues that went wrong with the project demonstrate Defendants' representations that they were capable of performing the job were false. Evidence was presented at the trial regarding issues with the foundation, flooring, and Sonotubes. Additionally, there were several accidents driving to, from, and around the Property, including several vehicles and equipment sliding off the road and a vehicle accident that led a BFH Idaho employee suffering serious injuries.

Defendants dispute they were responsible for any of these issues or accidents, and instead they point to problems with subcontractors and the dangerous weather and road conditions. However, even if Defendants were responsible for any or all of these occurrences, these incidents are not indicative that Defendants knowingly made a false statement concerning their capabilities at the time they accepted the job. As noted by the BAP in *Biswas*, the fact Defendants may have encountered issues during the construction

MEMORANDUM OF DECISION - 11

they were not equipped to handle does not establish that Defendants knowingly made a false representation when they accepted the contract.

Based on their experience and the fact Defendants clearly communicated they had never built a log-cabin, the Court does not find that Defendants knowingly made a false statement concerning their abilities to complete Plaintiffs' project. Additionally, though there were several issues during construction, even assuming those issues were attributable to Defendants, when considering the totality of the circumstances, the Court does not find that Defendants acted with the requisite intent to deceive Plaintiffs. Accordingly, statements regarding Defendants' experience do not support a finding of nondischargeability under § 523(a)(2)(A).

### b. Statements Regarding Use of Loan Funds

Plaintiffs also assert Defendants made fraudulent representations in their draw requests. First, Plaintiffs note that the construction contract establishes BFH Idaho is responsible for providing their own Builder's Risk Insurance. Ex. 101 at 6. Despite this, Defendants submitted several draw requests for Builder's Risk Insurance and ultimately received $1,500. *See* Exs. 107, 109, 111, 112, 114, 115, & 116. However, Defendants testified they believed Plaintiffs had access to the getbuilt.com system and could see the details when approving the draw requests. As such, while Defendants may have improperly sought payments for the Builder's Risk Insurance, the Court does not find that Defendants acted with the intent to deceive Plaintiffs. Thus, the Court is unable to conclude that the draw requests for the Builder's Risk Insurance constitute false

MEMORANDUM OF DECISION - 12

representation or that Defendants acted with the requisite intent for purposes of § 523(a)(2)(A).[3]

Second, Plaintiffs assert Defendants submitted and received several draws from the loan funds which were not used on their project. Plaintiffs assert $41,782.47 was requested through draw requests but cannot be accounted for and do not appear to have been used on their project. To support their assertion that loan funds were misused, Plaintiffs point to several invoiced payments they claim were either never paid for by Defendants or were paid less than the amount requested by Defendants. However, the record demonstrates some of these invoices were in fact paid in whole or in part. For example, Plaintiffs assert Defendants never paid the $5,400 owed to Donny Stevens Trucking, Inc. which was invoiced on August 19, 2020. However, Defendants' bank statement for their US Bank account ending 5569 shows a payment to Donny Stevens Trucking, Inc. on August 21, 2020, for $5,400. Ex. 120 at 163. Additionally, Plaintiffs claim Franklin Building was never paid $11,119.46 for framing or roofing materials. However, two payments were made by Defendants to Franklin Building in the amounts of $6,121.47 and $7,249 in November and December of 2020. Ex. 120 at 197 & 207. Plaintiffs also point to an invoice for ICF of Idaho for $13,674.75 but a payment from

---

[3] Plaintiffs argue they are entitled to damages for the improper Builder's Risk Insurance payments in their closing brief. However, Plaintiffs do not specify under which provision of § 523(a) makes such damages nondischargeable. While the analysis here is under § 523(a)(2)(A) as a false representation, the Court also finds that Plaintiffs do not satisfy their burden under § 523(a)(4) because they did not present sufficient evidence of intent.

MEMORANDUM OF DECISION - 13

Defendants only reflecting $6,347.38. However, there is another payment made to ICF of Idaho for $4,575 made on September 11, 2020. Ex. 120 at 174.

While Plaintiffs may have established there are some draw requests that do not fully correspond with a receipt or bank record demonstrating the full amount of the request was utilized for the requested purpose, Plaintiffs have not presented sufficient evidence that Defendants made the loan draw requests with the requisite intent. In *Sullivan v. Ratz*, a case from the Northern District of Illinois, the plaintiff alleged the defendant, who had been hired as a contractor for a home improvement project, had misused loan funds intended for the completion of a bathroom addition. 551 B.R. 338 (N.D. Ill. 2016). However, the bankruptcy court determined that the record did not evidence an intent to use the funds for a purpose other than the construction, especially considering the facts that supplies had been purchased, labor had been hired, and some work was actually performed. *Id.* at 350. Thus, though the defendants' "record-keeping and project management skills certainly left something to be desired," the court held that the plaintiff had not met her burden of establishing intent under § 523(a)(2)(A). *Id.*

Similar to *Sullivan v. Ratz*, the record does not indicate Defendants took the loan funds with the intent to misuse them—rather, Defendants performed significant work on the cabin and the record demonstrates Defendants properly paid most of the fees. Thus, the Court does not find that Defendants acted with the requisite intent to deceive Plaintiffs as to the use of the loan funds. As such, Plaintiffs have not met their burden under § 523(a)(2)(A).

MEMORANDUM OF DECISION - 14

> **2.  Section 523(a)(4)**

Plaintiffs also seek a determination that any debt owed by Plaintiffs is nondischargeable under § 523(a)(4).  Under § 523(a)(4), a debt is nondischargeable to the extent it was obtained through "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  Here, Plaintiffs assert embezzlement, claiming Defendants misappropriated the loan funds for a purpose other than what the draw request indicated.

"In the nondischargeability context, embezzlement is defined as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or in whose hands it has lawfully come.'"  *Woodman*, 451 B.R. at 41 (quoting *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991)).  To establish embezzlement for the purposes of nondischargeability, "a creditor must demonstrate (1) that property was rightfully in the possession of a nonowner, (2) that the nonowner appropriated the property to a use other than for which it was entrusted, and (3) the circumstances indicate fraud."  *King v. Lough (In re Lough)*, 422 B.R. 727, 735 (Bankr. D. Idaho 2010).  Circumstances indicating fraud means "such circumstances that would indicate the presence of fraud or that the debtor acted with fraudulent intent."  *Brown v. Johnson (In re Johnson)*, 2021 WL 560093, at *7 (Bankr. D. Idaho Feb. 10, 2021).

Embezzlement under § 523(a)(4) does require "'wrongful' or 'felonious' intent, similar to a 'culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant . . . behavior.'"  *Peltier v. Van Loo Fiduciary Srvs. (In re Peltier)*, 643 B.R. 349 (9th Cir. BAP 2022) (quoting *Bullock v.*

MEMORANDUM OF DECISION - 15

*BankChampaign, N.A.*, 569 U.S. 267, 269–74 (2013)).  However, "circumstances indicating fraud" can include circumstances where the debtor intended to conceal misappropriations from the creditor.  *PMM Invs., LLC v. Campbell (In re Campbell)*, 490 B.R. 390, 402 (Bankr. D. Ariz. 2013).

Here, Plaintiffs have not met their burden under § 523(a)(4).  First, Plaintiffs cannot establish the appropriation of the loan funds for another purpose.  Plaintiffs assert they cannot account for $41,782.47 requested by Defendants through draws.  However, as discussed previously, Plaintiffs have not adequately established that these funds were not used for the construction of the cabin on their Property.

Further, Plaintiffs have not presented sufficient evidence of Defendants' wrongful intent or circumstances indicating fraud.  Plaintiffs point to a loan Defendants had from National Funding and their aggressive payments on the loan as a circumstance indicating fraud.  Plaintiffs argue Defendants used some of the draw funds to make payments on Defendants' National Funding loan.  However, this assertion is not substantiated by the evidence presented.

The National Funding loan funds were deposited in Defendants' U.S. Bank account on October 13, 2020. Ex. 120 at 177.  At this point, Defendants had already received funds from 7 of the 11 draw requests and paid the majority of the expenses incurred on the cabin construction.  Further, the draw funds were not the only sources of money coming into Defendants' U.S. Bank account—Defendants' bank records demonstrate they consistently had other deposits in varying amounts.  *See* Ex. 120 at 167, 177, 189 & 203 (demonstrating deposits into the U.S. Bank account other than draws

MEMORANDUM OF DECISION - 16

from Plaintiffs' project). As such, Plaintiffs have not established that the presence of the National Funding loan and its repayment amount to circumstances indicating fraud. On this record, the Court does not find that Defendants acted with any wrongful intent or that there were circumstances indicating fraud. Accordingly, the Court finds Plaintiffs have not met their burden under § 523(a)(4).

### 3. Section 523(a)(6)

Finally, Plaintiffs assert that any debt owed to them by Defendants is nondischargeable under § 523(a)(6). Under § 523(a)(6), a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." As noted by the Ninth Circuit in *Lockerby v. Sierra*, "tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6)." 535 F.3d 1038, 1040 (9th Cir. 2008). Thus, a mere breach of contract will not be sufficient unless accompanied by a showing of tortious conduct. *Petralia v. Jerich (In re Jerich)*, 238 F.3d 1202, 1205 (9th Cir. 2001). Bankruptcy courts look to state law to determine if the defendant's conduct was tortious. *Id.*

Plaintiffs must establish that the alleged injury was willful. An injury is willful where "the debtor had a subjective motive to inflict the injury or that the debtor believed the injury was substantially certain to occur as a result of his conduct." *Jerich*, 238 F.3d at 1208. Importantly, under § 523(a)(6), it is not enough that the debtor performed an intentional act which resulted in the injury—the debtor must have intended the injury actually occur. *Masuo v. Galan (In re Galan)*, 455 B.R. 214, 222 (Bankr. D. Idaho

MEMORANDUM OF DECISION - 17

2011). Under this standard, gross recklessness is not sufficient to establish willfulness. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 464 (9th Cir. BAP 2015).

Plaintiffs assert Defendants converted the loan funds for their personal use. As noted in *Armstrong*, a claim of conversion can support a finding of nondischargeability under § 523(a)(6). *Cadleway Props., Inc. v. Armstrong (In re Armstrong)*, 2006 WL 2850527, at *11 (Bankr. D. Idaho Oct. 3, 2006). However,

> [A] creditor must show that a debtor, when converting collateral, did so with the specific intent of depriving the creditor of its collateral or did so knowing, with substantial certainty, that the creditor would be harmed by the conversion. This subjective test focuses on whether the injury was in fact anticipated by the debtor and thus insulates the innocent collateral conversions from non-dischargeability under § 523(a)(6).

*Id.* (quoting *Spokane Ry. Credit Union v. Endicott (In re Endicott)*, 254 B.R. 471, 478 (Bankr. D. Idaho 2006)). In other words, if the conversion was the result of an "honest but erroneous belief . . . even if such conduct can be viewed as negligent, unreasonable or reckless," there is not the requisite intent to support a finding of nondischargeability under § 523(a)(6). *Id.*

Because Plaintiffs alleged Defendants converted the loan funds for their personal use, Defendants needed to show that this conversion was the result of something more than negligent or reckless behavior. As noted previously, Plaintiffs have not presented sufficient evidence that Defendants used any of the loan funds for their personal use. Further, even if some of the loan funds cannot be properly accounted for, Plaintiffs have not established Defendants acted with the specific intent to deprive Plaintiffs as required under § 523(a)(6). Similar to the analysis under § 523(a)(2)(A) and (a)(4), the Court

MEMORANDUM OF DECISION - 18

finds Plaintiffs have not established the requisite intent to establish Defendants acted willfully or maliciously under § 523(a)(6).

**CONCLUSION**

Plaintiffs have not proven by a preponderance of the evidence each of the requisite elements of § 523(a)(2)(A), (a)(4), and (a)(6) and thus will not prevail in this adversary proceeding to have their claim declared nondischargeable. The Court will enter a judgment consistent with this Decision.

DATED: April 6, 2023



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 19